In re Douglas F. GANSLER,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 03–BG–1345.

District of Columbia Court of Appeals.

Argued Nov. 17, 2005.
Decided Dec. 15, 2005.

Douglas F. Gansler, pro se.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

John T. Rooney, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before FARRELL, RUIZ, and KRAMER, Associate Judges.

FARRELL, Associate Judge.

The Court of Appeals of Maryland reprimanded respondent Douglas F. Gansler for statements that, in his capacity as State's Attorney for Montgomery County, Gansler had made on three occasions about matters which the Court of Appeals found had a substantial likelihood of depriving criminal defendants of fair trials. *See Attorney Grievance Comm. of Md. v. Gansler,* 377 Md. 656, 835 A.2d 548, 574 (2003). Specifically, the Court held that on each occasion Gansler violated Rule 3.6(a) of the Maryland Rules of Professional Conduct, which prohibits statements by a lawyer that he knows or should know "will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

Before this court is a recommendation of the Board on Professional Responsibility to impose equivalent reciprocal discipline in the form of a public censure. *See, e.g., In re Bridges,* 805 A.2d 233, 234 (D.C.2002) (public censure in the District is functionally equivalent to a public reprimand in another jurisdiction). As applied to Gansler acting in his role of prosecutor, the Board recognized that the corresponding prohibition in this jurisdiction is contained in Rule 3.8(f) of the District's Rules of Professional Conduct, which provides that, "[e]xcept for statements which are necessary to inform the public of the nature and extent of the prosecutor's action and which serve a legitimate law enforcement purpose, [the prosecutor in a criminal case shall not] make extrajudicial comments which serve to heighten condemnation of the accused." Applying the standards for imposition of reciprocal discipline set forth in D.C. Bar Rule XI, § 11(c), the Board concluded principally that Gansler had not met his burden to show, by clear and convincing evidence, that his misconduct in

Maryland did not violate Rule 3.8(f)'s prohibition. *See* Rule XI, § 11(c)(5).

We accept the Board's conclusion and recommendation. Whether or not, in an original discipline proceeding applying D.C. rules to statements of a prosecutor of the sort made by Gansler, this court would conclude that all or some of those statements violated Rule 3.8(f), Gansler has not persuaded us in this derivative discipline proceeding that his extrajudicial comments would not be misconduct in this jurisdiction.

### I.

The facts underlying the Maryland violations, set forth comprehensively in the Court of Appeals' opinion, *see* 835 A.2d at 554–56, relate to three criminal cases that involved, respectively, defendants named Cook, Lucas, and Perry. First, at a press conference in the Cook case at which police announced that Cook would be charged with the murder of a female jogger, Gansler himself made several statements to the media. He declared that Cook had confessed to the murder and furnished specific information about the surrounding circumstances, including that Cook had "provided 'incredible details that only the murderer would have known.'" *Id.* at 570. Further, as the Maryland court found, he "magnified the prejudicial effect of his statements by bolstering the believability of the confession," stating that "before Cook traveled to the crime scene and 'went over in detail by detail every step of' the murder, the police had provided him with a restful night's sleep." *Id.*

Second, in the Lucas case, the police had similarly held a press conference to announce the arrest of Lucas for allegedly murdering a priest. Gansler spoke at the press conference and declared that the police had been "'able to determine definitively that indeed it was Mr. Lucas who had committed the crime.'" *Id.* at 555. He "then expressed his opinion that 'we have found the person who committed the crime at this point'. and that the case against Lucas 'will be a strong case.'" *Id.* The Maryland court concluded that "Gansler's proclamation that 'they' had apprehended the persons who committed the crimes in the Cook and Lucas cases directly contravened the provisions of MRPC 3.6(b)(4)," [1] as "[t]he comments blatantly expressed Gansler's opinion of the guilt of the defendants," an opinion he "supported ... by pointing to specific circumstances, such as confessions and physical evidence, to make his views more reliable." *Id.* at 572.

Finally, in the Perry case, after the Court of Appeals had reversed Perry's convictions for the murder of a boy, the boy's mother, and a nurse, Gansler made extrajudicial statements that were reported in a newspaper in which he announced, in connection with a possible retrial, "that 'he has decided to offer [Perry] a plea bargain' and 'that, 'when the offer is formally presented, Perry would have six weeks to make a decision.'" *Id.* at 556. The Maryland court concluded that these statements—both announcing the plea offer and "discuss[ing] the impending deadline for Perry to accept that offer, all during a very public and controversial prosecution of a multiple murder suspect"—served to "place greater pressure on the defendant to accept the plea offer" and, "[m]ore importantly, ... likely influenced potential jurors in Perry's case by

1. Rule 3.6(b) of the Maryland Rules provides that a statement referred to in Rule 3.6(a) is likely to have the prejudicial effect defined by that rule when it relates to any of six enumerated matters, including (b)(4) ("any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration").

communicating that the lead prosecutor believed the defendant was guilty." *Id.* at 571.

## II.

■ This court's rules governing the members of our bar provide that reciprocal discipline "shall be imposed unless the attorney demonstrates, by clear and convincing evidence," that the case falls within one or more of five enumerated exceptions. D.C. Bar R. XI, § 11(c). "The rule thus creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992) (footnote and citation omitted). In his brief, Gansler nominally contends that he meets all five of Rule XI, § 11(c)'s exceptions. He contends, for example, that there was a serious "infirmity of proof," § 11(c)(2), because "[a]t no time during the lengthy pendency of this matter in Maryland did [Maryland Bar Counsel] provide a scintilla of proof that [Gansler] knew or should have known that any comment that [he] made would have a substantial likelihood of materially prejudicing an adjudicative proceeding" (Br. for Resp. at 12). This assertion, made with no further elaboration, falls well short of meeting Gansler's "heavy" burden, *Bridges*, 805 A.2d at 235, to show that the Maryland court lacked evidence of his actual or constructive knowledge of the likelihood of prejudice. The infirmity of proof exception "is not an invitation to the attorney to relitigate in the District of Columbia the adverse findings of another court in a procedurally fair hearing," *id.*, and, as the Board points out, the Maryland court

"devoted substantial attention to [the] issue" of Gansler's knowledge of likelihood that his statements would result in prejudice.

■ Gansler further argues that the Maryland proceedings were "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." Rule XI, § 11(c)(1). In his brief, this is presented merely as an argument that Gansler could not have foreseen—hence had not received notice—that Maryland would hold any of his challenged statements to fall outside the "safe harbor" that Maryland Rule 3.6 provides for, among other statements, an attorney's disclosure of information already "contained in a public record." *See Gansler*, 835 A.2d at 563, 566.[2] But the Maryland court explained that, precisely "[b]ecause there [was] no settled definition of 'information contained in a public record'" at the time of Gansler's actions, it would "construe the phrase in its broadest form as applied to Gansler in this case," *id.* at 567, and it went on to do so. Gansler is not at liberty, under the guise of a claim of unfair denial of notice, to relitigate the Maryland court's findings concerning which of his statements did, and which did not, come within the court's broad definition of the "safe harbor."

■ At oral argument here, Gansler's argument that he was denied notice shifted ground to the contention that, whatever notice Maryland's Rule 3.6(a) furnished him about the propriety of his actions, he could not reasonably have foreseen that he would be disciplined, even reciprocally, for

---

**2.** "The provisions under subsection (c) [of Maryland Rule 3.6] are known as 'safe harbors.'" *Gansler*, 835 A.2d at 563 (citation omitted). The District's Rule 3.8(f), governing out of court comments by a prosecutor, contains no such "safe harbor" by its terms,

although whether or not information revealed by a prosecutor is already present in a public record would presumably be relevant to whether the prosecutor's statements transgressed the prohibition of the rule.

the same conduct under this jurisdiction's Rule 3.8(f). This is not so much an argument of notice-denied as it is one that Gansler's "misconduct elsewhere does not constitute misconduct in the District of Columbia." Rule XI, § 11(c)(5). That is to say, the argument would have merit only if Rule 3.8(f) imposed substantially different, or lesser, limitations on a prosecutor in regard to extrajudicial statements than does Maryland's Rule 3.6(a). Gansler has not met his burden of persuading us that it does.[3]

The burden of proof is important here. As the board recognized, no reported decision of this court has had occasion to interpret Rule 3.8(f). In an original discipline proceeding, we would confront directly the question whether statements by a prosecutor of the sort Gansler made violate the ban on "extrajudicial comments which serve to heighten condemnation of the accused," taking into account the rule's exception "for statements ... necessary to inform the public of the nature and extent of the prosecutor's action and which serve a legitimate law enforcement purpose."[4] But we do not face these issues directly; rather we do so derivatively. This court has "adopted a rigid standard for reciprocal bar discipline cases," *In re Zdravkovich*, 831 A.2d 964, 968 (D.C.2003), in light both of "the notion that another jurisdiction has already afforded the attorney a full disciplinary proceeding," and of "the idea that there is merit in according deference, for its own sake, to the actions of other jurisdictions with respect to the attorneys over whom we share supervisory authority." *Id.* at 969. Correspondingly, we have been "general[ly] reluctan[t] ... to have the disciplinary law of the District of Columbia ... developed in proceedings that are characterized by deference to another jurisdiction." *In re Childress*, 811 A.2d 805, 807 (D.C.2002).

This case, a reciprocal one, requires no original interpretation of the reach of Rule 3.8(f). Gansler has not attempted to show, clearly and convincingly, that differences in its language permit any more liberal a resort to out-of-court statements by prosecutors than does Maryland's Rule 3.6(a). The sole argument in his brief on this point (under the heading, "The misconduct elsewhere does not constitute misconduct in the District of Columbia") is the previously-addressed, single-sentence assertion that "[t]here exists no caselaw or precedent of any kind in the District of Columbia to remotely suggest that a publicly elected law enforcement officer cannot publicly state that which is already public"

---

3. As applied to Gansler's conduct, the Board correctly determined that the counterpart in this jurisdiction to Maryland Rule 3.6(a) is Rule 3.8(f), rather than this jurisdiction's Rule 3.6 ("Trial Publicity"). Rule 3.6 in this jurisdiction limits the ban on extrajudicial statements by a lawyer—any lawyer—to situations where the lawyer is "engaged in a case being tried to a judge or jury" and the statements threaten "the impartiality of the judge or jury." All parties agree that, because the Cook, Lucas, and Perry cases were not "being tried" when Gansler made the statements in question, Rule 3.6 in this jurisdiction does not reach his conduct. At the same time, as the Board recognized, there need not be a precise alignment between the rules violated in the disciplining jurisdiction and the District of Columbia rules that would be violated by the same conduct. *See, e.g., In re Reiner*, 561 A.2d 479, 482 (D.C.1989) (where the differing rules have "the same substantive effect," this court in reciprocal discipline may apply a rule different from that applied by the foreign jurisdiction "despite slight variations in wording"); *In re Gregory*, 574 A.2d 265, 269–71 (D.C.1990). Hence we properly look to the applicability of Rule 3.8(f).

4. In Gansler's own case, all agree that a hypothetical original discipline proceeding here would be governed by Maryland's Rule 3.6(a), because of the choice of law provisions of Rule 8.5 of our Rules of Professional Conduct.

(Br. for Resp. at 13). That does not meet his burden under Rule XI, § 11(c)(5). The Board, for its part, expressed "no doubt that statements of opinions as to a defendant's guilt and comments on a defendant's confession would tend to 'heighten condemnation of the accused,' as contemplated by Rule 3.8(f)." And, after examining Gansler's statements at issue, it concluded too that "it appears unlikely that our court would find these statements to have been 'necessary to inform the public of the nature and extent of the prosecutor's action and ... to serve a legitimate law enforcement purpose." ' In the absence of any but a conclusory argument to the contrary by Gansler, the Board stated all that need be said in order for us to resolve this case.[5]

Accordingly, respondent Douglas F. Gansler is hereby publicly censured.

*So ordered*

---

**5.** Given our disposition of the case, we need not evaluate here Bar Counsel's novel argument that the choice of law principles of Rule 8.5, see note 4, *supra*, apply in reciprocal discipline proceedings and foreclose *any* inquiry into whether Gansler's conduct would amount to misconduct in this jurisdiction.

Because Bar Counsel ultimately agrees with the Board—and us—that Gansler has not met the exception created by § 11(c)(5) and should be publicly censured, we leave consideration of the Rule 8.5 argument to another case. *See, e.g., In re Corizzi,* 803 A.2d 438, 439 n. 1 (D.C.2002).